IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARK E. HILL,                        §
                                     §
          Plaintiff,                 §
                                     §
v.                                   §    CIVIL ACTION NO. H-08-3160
                                     §
MICHAEL ASTRUE,                      §
COMMISSIONER OF THE                  §
SOCIAL SECURITY ADMINISTRATION,      §
                                     §
          Defendant.                 §

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 18) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 16).  The court has considered the motions, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED**.

## I.  Case Background

### A. Procedural History

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 9, 11, 12, 13.

benefits under Title II and Title XVI of the Social Security Act ("the Act").

On August 27, 2004, Plaintiff filed an application for benefits and claimed an onset of disability dating from January 31, 2003, as a result of Hepatitis C.[2]  After Plaintiff's application was denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[3]  On March 5, 2007, the ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas.[4]  On April 10, 2007, after listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision.[5]  The ALJ determined that Plaintiff was not disabled at any time during the period covered by his application. On June 7, 2007, Plaintiff appealed the ALJ's decision.

On August 18, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed this civil action for judicial review of the Commissioner's unfavorable decision.[6]

---

[2] Transcript of the Administrative Proceedings ("Tr.") 35.

[3] Tr. 48, 44, 40.

[4] Tr. 15.

[5] Tr. 24.

[6] Tr. 16, 8.

**B. Factual History**

1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on September 22, 1962, and was forty-four years old at the date of the ALJ's decision.   In his application for Social Security benefits, Plaintiff alleged that he became disabled on January 31, 2003, but, during the course of the hearing, he and his representative moved to amend the alleged onset date to December 31, 2003.[7]   The motion was granted by the ALJ.[8] At the time of the hearing, Plaintiff possessed a general equivalency diploma and had received an honorable discharge from the Army.[9]   Plaintiff also had past relevant work experience as a pharmacy aide, correction officer, and a laborer on a conversion crew at the Toyota Center.[10]

2. Plaintiff's Testimony

During the ALJ hearing, the judge solicited testimony from Plaintiff, two medical experts ("ME"), and a vocational expert ("VE").  Plaintiff testified that he suffered from hemochromatosis, Hepatitis C, adrenal insufficiency (Addison's disease), hypogonadism, osteopenia, and a mood disorder.[11]   He averred that

---

[7] Tr. 15.

[8] Id.

[9] Tr. 244.

[10] Tr. 69.

[11] Tr. 245-46, 249, 251.

he suffered from obesity, depression, anger control issues, and flu-like symptoms as a result of the medications he took to treat the Hepatitis C and osteopenia.[12]

During his testimony, Plaintiff explained that his health problems made it difficult to stand for more than approximately forty-five minutes or to walk farther than one quarter of a block.[13] He maintained that he had problems squatting and kneeling and suffered from bone and joint pain in his fingers, hands, and arms.[14] Additionally, when questioned about his daily activities, Plaintiff stated that his wife sometimes helped him button his clothes and write, that he tried to help to do some of the housework, and that he had "a rolling chair that [he sits] in."[15]  At the time of the hearing, Plaintiff stated that while he used to go on the computer a lot, he had not done so recently because his depression and anger issues caused him to sleep for four hours during the day, three to four times a week, in addition to sleeping during the night.[16] Additionally, he claimed that when he was not sleeping, he "watch[ed] a little tv" but "[t]hat's about it."[17]

---

[12] Tr. 249, 252.

[13] Tr. 253.

[14] Id.

[15] Tr. 255.

[16] Tr. 256.

[17] Tr. 257.

### 3. Medical Evidence

Plaintiff's medical record contains little evidence of treatment related to his conditions prior to April 2004.[18]   On November 2, 2003, Plaintiff was admitted to the emergency room after a job-related accident injured his right foot. On February 23, 2004, he sought treatment for hives.[19]

In April and August 2004, Plaintiff sought treatment for his Hepatitis C.[20]   In February and March 2005, Plaintiff had three phlebotomies.[21]   In March 2005, Plaintiff reported that he had "a little pain in [his] right liver area," fatigue, and tachycardia, which he believed were side-effects of his medication.[22]   He also complained of irritability, weight changes, joint pain, mood swings, and a decreased libido.[23]   However, the examining physician described him as alert, well-oriented and pleasant.[24]   Subsequently, Plaintiff continued to undergo phlebotomies on a regular basis.   On April 27, 2005, Plaintiff stated that he was "doing ok" and had "no

---

[18] Tr. 135.

[19] See, e.g., Tr. 140, 137.

[20] Tr. 21, 120, 129.

[21] Tr. 22, 161; a phlebotomy is a procedure where blood is drawn from a vein. Plaintiff was undergoing phlebotomies as part of his treatment for hemochromatosis.

[22] Tr. 22, 162-63.

[23] Tr. 165, 162.

[24] Id.

5

medical complaints."[25]  In October 2005, Plaintiff repeated that he felt "ok."[26]  In March 2006, he reported that his endocrine problems were under "perfect control."[27]   In March 2006, Plaintiff's examining physician noted that Plaintiff was "moody, ha[d] no motivations, anxiety and depression."[28]  On April 3, 2006, Plaintiff received a negative pre-screen for depression.[29]

Between April and October 2006, Plaintiff moved out of the Houston area.[30]  In October 2006, he had no complaints other than recurrent nosebleeds, which he attributed as a side effect of his medications.[31]  In November 2006, Plaintiff underwent a phlebotomy and, while he denied having any medical complaints, he stated that he might need medication for his mood.[32]  At that time, Plaintiff reported anxiety, weight fluctuations, a lack of motivation, and mood swings that affected his relationship with his wife.[33]  In response to his complaints, Plaintiff was prescribed a low-dose

---

[25] Tr. 22, 155-56.

[26] Tr. 22, 194.

[27] Tr. 22, 196.

[28] Tr. 22, 196, 197.

[29] Tr. 198.

[30] Tr. 199-203.

[31] Tr. 205.

[32] Tr. 22, 207, 210.

[33] Tr. 211.

medication to control his anger and mood swings.[34]   In December 2006, Plaintiff again underwent a phlebotomy and denied having "new problems."[35]   In January 2007, Plaintiff's responses to a depression pre-screen resulted in a positive score.[36]   The medical records do not extend past this entry.

### 4. Medical Expert's Testimony

After Plaintiff testified, two medical experts offered their opinions.   The first medical expert to testify, Albert Oguejiofor, M.D., ("Dr. Oguejiofor"), focused on Plaintiff's physical impairments.   Based on his review of the medical evidence, Dr. Oguejiofor testified that Plaintiff suffered from three impairments: Addison's disease, hemochromatosis, and Hepatitis C.[37] Dr. Oguejiofor noted that Plaintiff's medical records indicated symptoms of hypogonadism and osteopenia but those symptoms did not constitute severe impairments.[38]   Dr. Oguejiofor also considered whether Plaintiff's symptoms met any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").   He found that Plaintiff's impairments did not equal the listing requirements, particularly Listing 5.05 - chronic liver disease, because he found no evidence

---

[34] Tr. 213.

[35] Tr. 22, 223-25.

[36] Tr. 230.

[37] Tr. 259-61.

[38] Tr. 261-62.

of either an iron overload, cirrhosis, or liver failure.[39]   Dr. Oguejiofor did, however, testify that Plaintiff was limited to light work activity.[40]

   Ashok Khushalani, M.D., ("Dr. Khushalani"), a psychiatrist, testified that, based on his review of the medical records, there was "not a whole lot of documentation to outline any kind of severity that would come close to listing level."[41]   The ALJ specifically questioned Dr. Khushalani on the effectiveness of Plaintiff's anti-depressants in controlling his mood disorders. Dr. Khushalani testified that he presumed from the record that Plaintiff began treatment with Seroquel, but that was ineffective, so he switched to citalopram (Celexa).[42]  Dr. Khushalani noted that there was very little in Plaintiff's medical records documenting the severity of Plaintiff's mood disorders and he could glean no additional information based on Plaintiff's response to the anti-depressant medication.[43]  Dr. Khushalani stated that in his opinion, Plaintiff had no severe mental impairments.[44]

   5. Vocational Expert's Testimony

---

[39] Tr. 260.

[40] Tr. 261.

[41] Tr. 263.

[42] Tr. 264.

[43] Tr. 264.

[44] Tr. 265.

Charles Poor, ("Mr. Poor") a vocational expert testified.[45] Mr. Poor noted that, in the past fifteen years, Plaintiff had engaged in three occupations: a corrections officer, a pharmacy aide, and a laborer on a conversion crew at the Toyota Center.[46] According to Mr. Poor, a hypothetical individual having limitations identical to Plaintiff's (forty-four years of age with a general equivalency diploma and a residual functional capacity ("RFC") for light work) could perform the work of a pharmacy aide.[47]  However, upon cross-examination by Plaintiff's attorney, Mr. Poor conceded that if the ALJ's hypothetical individual also suffered from debilitating fatigue which required him to take two to three four-hour breaks a week, the hypothetical person would not be able to perform any competitive work.[48]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: (1) substantial evidence in the record supports the decision; and (2) the ALJ applied proper legal standards in evaluating evidence.  Walters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

---

[45] Tr. 266.

[46] Tr. 266.

[47] Tr. 266-67.

[48] Tr. 267.

### A.   Substantial Evidence

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).   It is "something more than a scintilla, but less than a preponderance." Id. The Commissioner has the responsibility of deciding any conflict in the evidence. Id.   If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not re-weigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown, 192 F.3d at 496.   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.   Id.

### B.   Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).   Under

10

the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience and [RFC] must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520. By judicial practice, the claimant bears the burden of proof on the first four above steps, while the

11

Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy his burden either by reliance upon the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

### III. Analysis

**A. Plaintiff's Motion for Summary Judgment**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.[49]  Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.[50]  Specifically, Plaintiff argues that: (1) the ALJ erred in not determining whether Plaintiff could maintain employment; (2) the ALJ erred in finding that Plaintiff's other impairments, if considered cumulatively, were not severe; (3) the ALJ erred by not taking into account the alleged side effects of Plaintiff's medication; and (4) the ALJ failed to

---

[49] Plaintiff's Original Complaint, Docket Entry No. 1.

[50] Id. at p. 2.

properly consider the Veterans Administration ("VA") disability determination.[51]   In response, Defendant argues that the ALJ's decision is supported by substantial evidence and that the ALJ committed no legal errors.[52]

## 1. Maintaining Employment

Plaintiff's first argument is that the ALJ erred in failing to determine whether Plaintiff could maintain employment.[53]  Plaintiff cites <u>Singletary v. Bowen</u>, 798 F.2d 818 (5th Cir. 1986), and <u>Watson v. Barnhart</u>, 288 F.3d 212 (5th Cir. 2002), as authority that the ALJ is required to specifically address whether Plaintiff was capable of working on an ongoing basis. Plaintiff argues that the ALJ should have considered the cumulative effect of his mental and physical conditions, including the fact that his mental conditions "wax and wane" in severity, when assessing Plaintiff's RFC.[54]

When the ALJ makes an RFC finding, he "assesses the nature and extent of the individual's limitations and determines the claimant's RFC for work activity 'on a regular and continuing

---

[51] Plaintiff's Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 18, pp. 4-8.

[52] Defendant's Cross-Motion for Summary Judgment, Defendant's Memorandum in Support of Cross-Motion for Summary Judgment, Docket Entry No. 16, p. 3.

[53] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 18, p 4.

[54] <u>Id.</u>

basis.'"[55]   Work activity on a "regular and continuing basis" is defined as, "8 hours a day, for 5 days a week, or an equivalent work schedule."  <u>See</u> SSR 96-8p at *1.  Therefore, when an ALJ makes an RFC finding, he implicitly makes a finding as to whether or not a claimant can maintain employment.

In certain cases, however, an ALJ must make a separate finding on whether or not a claimant can maintain employment.  In <u>Singletary</u>, the plaintiff complained specifically that he could not maintain employment because of his mental condition.  <u>Singletary v. Bowen</u>, 798 F.2d 818, 822 (5th Cir. 1986).   The plaintiff in <u>Singletary</u> had a long history of finding employment, but was unable to maintain it.   <u>Id.</u>   In light of this, the court held that it was error for the ALJ not to make a separate finding on whether the plaintiff could maintain employment.

The present case is distinguishable from <u>Singletary</u>.  Unlike the claimant in <u>Singletary</u>, who had never been able to maintain employment, Plaintiff has held jobs as a corrections officer and a pharmacy aide for a number of years.  Furthermore, while Plaintiff has not held a job since 2003, his medical record is void of any mention of mental conditions until 2005.  This suggests that Plaintiff's mental condition was not a factor that contributed to his unemployment, despite Plaintiff's claim that he is unable to maintain employment due to his mood disorders.  This is dissimilar

---

[55] Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 3.

to the claimant in <u>Singletary</u> who tried, unsuccessfully, to work numerous different jobs. <u>Id.</u> at 820.

Plaintiff also claims that his mental conditions wax and wane in severity, and as a result, he may be able to obtain a job, but would be unable to maintain the employment.[56]  Plaintiff cites the variability in severity of his impairments as further proof that the ALJ should be required to make a separate assessment of whether he can maintain employment.[57]  However, Plaintiff has failed to cite to any specific medical evidence which suggests that any of his conditions wax and wane with such severity that would affect his ability to maintain employment.[58]  Additionally, at the hearing before the ALJ, Dr. Khushalani, a medical expert specializing in psychiatry, testified that, after a review of Plaintiff's medical records, he did not believe that Plaintiff's condition constituted a severe impairment.[59]  Accordingly, neither Plaintiff's medical records nor Dr. Khushalani's testimony at trial support Plaintiff's argument that his mental condition made him unable to maintain employment.

### 2. Additional Impairments

Plaintiff argues that the ALJ erred because he failed to find

---

[56] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 18, p. 4.

[57] <u>Id.</u>

[58] Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 2.

[59] Tr. 265.

the additional impairments proffered by Plaintiff to be severe.[60]
The additional impairments offered by Plaintiff are insomnia,
anxiety, mood disorder, anger management problems, headaches,
chronic fatigue, osteopenia, and splenomegaly.[61]  In response,
Defendant argues that the ALJ properly found that Plaintiff's
additional ailments were not severe.[62]

In support of their argument, both Plaintiff and Defendant
cite <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985) (stating that
"an impairment can be considered as not severe only if it is a
slight abnormality [having] such minimal effect on the individual
that it would not be expected to interfere with the individual's
ability to work, irrespective of age, education or work
experience").[63]  Plaintiff cites <u>Stone</u> to argue that the cumulative
effect of all of his mental and physical conditions imposes more
than a minimal effect on his ability to work, and, thus, the
additional impairments should be "severe."[64]

At step two of the sequential analysis, the severity of an

---

[60] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 4.

[61] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 4.

[62] Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket
Entry No. 19, p. 4.

[63] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 5.; Defendant's Response to
Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 4.

[64] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 5-6.

impairment or impairments is considered.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003) (citing 20 C.F.R. § 404.1520(c)).  To be found disabled, a claimant must show that he has a severe impairment.  Id.  A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id.

However, Plaintiff failed to present evidence that any of the additional impairments were disabling or prevented him from performing substantial gainful work activity.[65]  While Plaintiff's testimony that he suffered from depression, anxiety, mood swings, irritability, and weight changes was certainly considered and noted by the ALJ,[66] the mere diagnosis of an impairment, or the mention of a condition in the medical records does not establish a disabling impairment or even a significant impact on that person's functional capacity.  See Hames v. Harper, 707 F.2d 162, 166 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se).

Plaintiff fails to offer additional evidence that he cannot engage in substantial gainful activity.  He cites, as further evidence that his mental conditions were severe, a 2006 assessment

---

[65] Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 4.

[66] Tr. 18.

wherein he was given a GAF score[67] of 52.  A GAF score between 51-60
is indicative of "moderate symptoms OR any moderate difficulty in
social, occupational, or school functioning."[68] However, while
potentially relevant, the GAF scale does not have a direct
correlation to the severity requirements in the Listings. See 65
Fed. Reg. 50746, 50764-65 (August 21, 2000). Thus, Plaintiff's GAF
score is not evidence of a severe impairment that precludes him
from working.

Based on the record, there is substantial evidence to support
the ALJ's determination that Plaintiff's additional impairments of
insomnia, anxiety, mood disorder, anger control problems,
headaches, chronic fatigue, osteopenia, and splenomegaly were not
severe.

### 3. Side Effects

Plaintiff argues that the ALJ erred by not taking into account
the alleged side effects of his treatments when considering his
ability to work.[69]  Defendant maintains that Plaintiff does not
point to any evidence showing that he actually experienced the

---

[67] "Global Assessment of Functioning," or GAF is an expression of a
patient's overall level of mental function set forth in the American Psychiatric
Association's text, Diagnostic and Statistical Manual of Mental Disorders, 4th
ED. (DSM-IV). While relevant, GAF scores are not a determinant of disability. See
DSM-IV-TR, 34 (4th ed.-TR 2000).

[68] DSM-IV at 32.

[69] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 6.

symptoms or side effects listed in his brief.[70]

The regulations state that any side effects of medication should be considered when reaching a decision on a claimant's ability to work. 20 C.F.R. § 404.1529(c)(3)(iv). However, the next section clarifies that any statement made by a claimant must be evaluated in relation to the objective medical evidence. 20 C.F.R. § 404.1529(c)(4). A subjective claim without supporting objective medical evidence, cannot, by itself, establish disability. <u>Wren v. Sullivan</u>, 925 F.2d 123, 129 (5th Cir. 1991).

Plaintiff does not point to any evidence in his medical record to support his contention that the side effects of his medication affected his ability to work. Instead, he cites the court to his testimony before the ALJ, where he testified that he suffered from "[h]eadaches, depression, irritability, agitation, anger, muscle pains, [and] joint pains" as side effects of his medication.[71] However, Plaintiff's medical record does not corroborate these claims. In March 2005, Plaintiff complained once of liver pain, tachycardia, and fatigue, which he believed were associated with his medications.[72] However, at other appointments throughout 2005 and 2006 he did not report any complaints.[73] It is the duty of the

---

[70] Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 8.

[71] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 18, p. 6; <u>See</u> <u>also</u> Tr. 257.

[72] Tr. 22, 162-63.

[73] Tr. 22, 156, 158, 194, 196-97, 207, 217-22, 223-225.

ALJ to weigh conflicting evidence.   Accordingly, the court finds that the ALJ had substantial evidence to support his determination of Plaintiff's RFC.

### 4. New Evidence

Finally, Plaintiff argues that the ALJ should have given weight to a Veterans Administration disability determination.[74] Plaintiff submits, for the first time, a copy of this determination to the court with his Motion for Summary Judgment, labeling it Exhibit "A."[75]   Plaintiff notes that the disability determination was increased from twenty percent to forty percent on December 19, 2006, "well prior to the March 5, 2007 ALJ hearing" and that this determination applied retroactively back to April 1, 2005.[76]   While Plaintiff may be correct in his statement that a Veterans Administration rating of disability is evidence that should be given great weight by an ALJ,[77] he does not explain how the ALJ could give the determination any weight when it was not presented to the ALJ in the record.

When a plaintiff presents new evidence to the district court, the court may remand the case to the Commissioner pursuant to 42 U.S.C. § 405(g).   The statute provides for only two kinds of remand

---

[74] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 18, p. 7.

[75] Id.

[76] Id.

[77] Id. at 8.

for further administrative proceedings: (1) the fourth sentence of
the section authorizes an order of remand in connection with the
court's judgment affirming, modifying, or reversing the decision of
the Commissioner; and (2) the sixth sentence of the section
authorizes an order of remand when new evidence has come to light.
42 U.S.C. § 405(g); Istre v. Apfel, 208 F.3d 517, 519 (5ᵗʰ Cir.
2000).  A sentence-six remand is justified only when the evidence
that has surfaced is: (1) new; (2) material; and (3) was not
incorporated into the administrative record due to some "good
cause."  Leggett v. Chater, 67 F.3d 558, 567 (5ᵗʰ Cir. 1995).  The
evidence is material if a "reasonable possibility" exists that it
would have changed the outcome of the administrative proceedings.
Latham v. Shalala, 36 F.3d 482, 483 (5ᵗʰ Cir. 1994).

A remand is not justified in this case because the evidence
fails all three of Leggett's elements.  In Plaintiff's own words,
the determination was made "well prior" to the March 5, 2006 ALJ
hearing, and thus, is not "new" evidence.[78]  Additionally, the
letter is not material evidence because there is not a reasonable
possibility that the letter would have changed the outcome of the
administrative proceedings for two reasons.  First, the VA findings
conclude that Plaintiff was "not unable to work as a result of his

---

[78] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 7.

21

service connected disability."[79]  Second, and most importantly, by
Plaintiff's own admission the VA findings were made "based
substantially on the same records Plaintiff submitted in the
instant claim."[80]  There is not a reasonable possibility that the
VA's somewhat different interpretation of the same evidence
considered by the ALJ would have altered the ALJ's decision.
Finally, Plaintiff does not offer any hint as to a reason why this
evidence was not incorporated into the record, so this court can
only assume that there is no good cause for its exclusion.
Therefore, a sentence-six remand is not justified under the
circumstances presented here.

## B.    Defendant's Cross-Motion for Summary Judgment

Defendant asserts that the ALJ's decision should be affirmed
because he properly determined Plaintiff was not disabled.[81]
Specifically, Defendant argues that substantial evidence exists and
the proper legal standards were used to determine that Plaintiff
was not disabled.

The court recognizes the seriousness of Plaintiff's medical
condition; however, the record must be reviewed with an eye toward
determining only whether the ALJ's decision is supported by more

---

[79] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, Exhibit A.

[80] Memorandum of Points and Authorities in Support of Plaintiff's Motion
for Summary Judgment, Docket Entry No. 18, p. 7.

[81]    Defendant's Memorandum in Support of Cross-Motion for Summary
Judgment, Docket Entry No. 11, p. 8.

than a scintilla of evidence.  <u>See</u> <u>Carey</u>, 230 F.3d at 135.

As the court finds more than a scintilla of evidence in support of the determination, it cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  <u>See</u> <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001); <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991).  The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.

The court finds that more than a scintilla of evidence exists to support the ALJ's decision and that the ALJ committed no legal error; therefore, Defendant's Motion for Summary Judgment should be **GRANTED**.

## IV.  Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

**SIGNED** in Houston, Texas, this <u>1st</u> day of September, 2009.

Nancy K. Johnson
United States Magistrate Judge

23